FILED
 2011 May-26  AM 10:34
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MARY PAIR,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 2:11-CV-559-RDP** |
| } | |
| **THE CITY OF FULTONDALE,** } | |
| **ALABAMA, et. al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on Defendant the City of Fultondale's Motion to Dismiss Amended Complaint (Doc. # 13) and Defendant Polly Kavli's Motion to Dismiss (Doc. # 14). The issues raised therein have been fully briefed by the parties and are now ripe for decision. Upon due consideration, Defendants' motions to dismiss are both due to be granted.

**I.    FACTS OF THE CASE**

Plaintiff, Mary Pair, asserts claims against Defendants the City of Fultondale (the "City") and Officer Polly Kavli of the Fultondale Police Department. (Doc. # 11). Plaintiff's complaint includes a federal claim of unlawful seizure, arrest, and detention in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983.[1] (*Id.* at ¶¶ 32-37). Plaintiff's claims arise from her arrest and detention on January 24, 2009 for allegedly obstructing governmental operations in violation of Alabama Code § 13A-10-2. (*Id.* at ¶¶ 11, 20).

On January 24, 2009, Officer Kavli was dispatched to 1711 Brisco Street in Fultondale, Alabama. (*Id.* at ¶ 11). A woman named Carey Goodson was at the residence and explained that

---

[1]All references to Plaintiff's complaint refer to the First Amended Complaint, Doc. # 11.

she and her husband were going through a divorce and she was there to retrieve some belongings. (*Id.* at ¶ 12). At an unspecified time shortly thereafter, John Goodson Jr. (Ms. Goodson's husband) was arrested at the residence for violating a Protection from Abuse Order and his father was arrested at the residence for disorderly conduct. (*Id.* at ¶13). After the two men were transported from the scene, Plaintiff, who is John Goodson Jr.'s sister, arrived at the residence and tried to speak with Officer Kavli. (*Id.* at ¶¶ 14, 15). Officer Kavli informed her that she must leave the scene or she would be arrested for obstructing a governmental operation. (*Id.* at ¶ 15). Plaintiff drove next door to her grandmother's house, which is approximately 100 yards away from the driveway of 1711 Brisco Street. (*Id.* at ¶ 16). Officer Kavli walked over to Plaintiff's vehicle and Plaintiff told Officer Kavli that she was going into her grandmother's house. (*Id.* at ¶ 18). Plaintiff began to walk towards her grandmother's house, but turned around and walked back towards her car when she realized that she had forgotten her purse (although she never asserts that she informed Officer Kavli why she was returning to her vehicle). (*Id.* at ¶ 18). Officer Kavli then arrested Plaintiff for obstructing a governmental operation. (*Id.* at ¶¶ 19, 20). A jury found Plaintiff not guilty of that charge on March 9, 2011 in the Circuit Court of Jefferson County, Alabama. (Doc. # 19-1).

Plaintiff claims that there was a lack of probable cause (as well as a lack of arguable probable cause) for her arrest, and therefore that her arrest and detention violated her right to be free from

unwarranted seizure under the Fourth and Fourteenth Amendments.[2]  (Doc. # 11, at 27-36).  She seeks compensatory, general, and punitive damages, attorney's fees, and costs. (*Id.*).

## II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.  Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).  It does, however, "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

As the Supreme Court has explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[2]Both Plaintiff's complaint and her response to the motions to dismiss allege that her Fourth Amendment right to be free from unreasonable searches and seizures was violated by her warrantless arrest for obstructing governmental operations by a City police officer. (Doc. # 11; Doc. # 19, at 11). However, to the extent that Plaintiff has attempted to state a separate claim under the Fourteenth Amendment using these same factual allegations, it is due to be dismissed because "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).  Plaintiff also claims, among other things, that she suffered the damage of malicious prosecution.  Nothing in this allegation leads the court to believe that she has attempted to state a claim for malicious prosecution, as the allegation is one of damages suffered and not the cause of the damage.  Nevertheless, to the extent that Plaintiff has asserted a claim for malicious prosecution, her complaint is wholly devoid of allegations of even the elements of the action, and is therefore due to be dismissed.

face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation and quotation marks omitted).

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions that are "couched as [] factual allegations." *Iqbal*, 129 S. Ct. at 1950. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims must be dismissed. *Id.*

"Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense [must] comply with the standards described in *Iqbal*." *Randall v. Scott*, 610 F.3d 701,

709 (11th Cir. 2010) (recognizing that *Iqbal* effectively overturned the Eleventh Circuit's heightened pleading standard for qualified immunity cases). The complaint should specify "what alleged rights were violated," "which of [the defendant's] actions allegedly violated those rights," and provide enough information for the court to determine "whether those rights were clearly established when the[] incidents occurred." *Amnesty Int'l., USA v. Battle*, 559 F.3d 1170, 1179-80 (11th Cir. 2009).

**III.   DISCUSSION**

    **A.   The City's Motion to Dismiss**

The City asserts that Plaintiff's § 1983 claim against it is due to be dismissed. The court agrees for the following reasons.

To impose liability on a municipality under § 1983, a plaintiff must show the existence of a "custom or policy that constituted deliberate indifference" to a constitutional right. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). A plaintiff meets this requirement by identifying either an officially promulgated policy or "a practice that is so settled and permanent that it takes on the force of the law." *Id.* at 1290 (internal citations and quotation marks omitted). Either way, a plaintiff must identify a person who speaks with final policymaking authority for the municipality. *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (*en banc*) (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989); *Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir.1996)).

An examination of Plaintiff's complaint with these principles of substantive law in mind shows that the pleading falls far short of stating a § 1983 claim against the City that is plausible on its face. Plaintiff's complaint makes the following allegations regarding liability of the City: that her rights were violated "pursuant to an official policy of the City of Fultondale, and/or pursuant to

a custom and practice endorsed or approved by the City of Fultondale;" that the City had knowledge of previous Constitutional violations committed by Officer Kavli; and that the Fourth and Fourteenth Amendments impose a duty on the City to "establish and implement policies, practices and procedures designed to assure . . . that its officers were properly trained as to the existence of and necessity of probable cause as a basis for arrest." (Doc. # 11, ¶ 31, 34-35). These allegations are devoid of specific facts and are conclusory; therefore, they are not entitled to an assumption of truth under the framework provided by *Iqbal*. Furthermore, even assuming that she has sufficiently alleged a pattern or practice of the City (by her conclusory allegation that the officers of the City were not trained as to the requirement of probable cause), Plaintiff has failed to identify or even allege that there existed an official policymaker that had made the decision not to train the officers.

For Plaintiff's complaint to survive the City's motion to dismiss, she must make specific factual allegations that would plausibly entitle her to relief if accepted as true. *See Iqbal*, 129 S. Ct. at 1948. Because she has failed to do so, her § 1983 claim against the City is due to be dismissed.

  **B.** **Officer Kavli's Motion to Dismiss**

Plaintiff's § 1983 claim is asserted against Officer Kavli in her individual capacity only. (Doc. # 11, at ¶ 7). For the reasons outlined below, the claim against Officer Kavli is due to be dismissed on qualified immunity grounds.

Officer Kavli asserts that Plaintiff's claims are due to be dismissed against her on qualified immunity grounds. (Doc. # 14). "Qualified immunity is an immunity from suit rather than a mere defense from liability." *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). Qualified immunity utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an

official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). "We generally accord . . . official conduct a presumption of legitimacy." *United States Department of State v. Ray,* 502 U.S. 164, 179 (1991). If Officer Kavli can establish that she is entitled to qualified immunity, then the claim asserted against her in her individual capacity must be dismissed. *See Randall*, 610 F.3d at 714.

The court determines whether a defendant is entitled to qualified immunity by engaging in a three-step analysis. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on the official claiming qualified immunity to establish that she was acting within her discretionary authority. *Id.* Next, the burden shifts to the plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Id.* at 1136-37 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Finally, "the plaintiff must show that the violation was 'clearly established.'" *Id.* at 1137.

### 1. Officer Kavli was acting within the scope of her discretionary authority.

The facts alleged in the complaint show plainly that Officer Kavli was on duty at the time of the arrest. Officer Kavli had been dispatched to Plaintiff's brother's house, where she spoke with Plaintiff's sister-in-law, Carey Goodson, who was moving out of the residence. (Doc. # 11, ¶¶ 11-15). Plaintiff arrived at the residence after Plaintiff's brother and father were arrested. *Id.* Officer Kavli arrested Plaintiff for obstructing a governmental operation while she was outside of her

grandmother's house, which is located within 100 yards of Plaintiff's brother's house. The arrests stemmed from an apparent misunderstanding regarding Plaintiff's actions in returning to her vehicle after telling Officer Kavli that she was going inside. *Id.* at ¶¶ 19-20.

Officer Kavli was acting within the scope of her discretionary authority when she arrested Plaintiff. "A government official proves that [s]he acted within the purview of h[er] discretionary authority by showing objective circumstances which would compel the conclusion that h[er] actions were undertaken pursuant to the performance of h[er] duties and within the scope of h[er] authority." *Sims v. Metro. Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992) (internal citations and quotation marks omitted). Looking objectively at the circumstances described in the complaint, it is readily apparent that Officer Kavli's arrest of Plaintiff was undertaken pursuant to her official duties stemming from an incident at 1711 Brisco Street with two members of Plaintiff's family. Officer Kavli asserts that she was engaged in the governmental functions of "making arrests, and then securing the Goodson residence and protecting Carey Goodson following the incident." (Doc. # 14, at 7).

### 2. Officer Kavli had arguable probable cause to arrest Plaintiff.

Having concluded that Officer Kavli was acting within the scope of her discretionary authority, the next step in the inquiry is whether Officer Kavli violated Plaintiff's constitutional rights by arresting her. It is axiomatic that warrantless arrests made without probable cause violate the Fourth Amendment's prohibition on unreasonable seizures. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Terry v. Ohio*, 392 U.S. 1, 16 (1968). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United*

*States v. Floyd,* 281 F.3d 1346, 1348 (11th Cir. 2002) (per curiam) (internal citations and quotation marks omitted). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts" and is determined based on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

When the Fourth Amendment analysis is conducted in the context of qualified immunity, however, it is not necessary that the officer have had probable cause to make the arrest; rather, the question is whether she had arguable probable cause. *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). Thus, the inquiry focuses on whether or not the officer reasonably, although perhaps mistakenly, believed that probable cause existed. *Id.* The facts of the case and the elements of the crime dictate whether or not probable cause or arguable probable cause existed for an arrest. *Skop*, 485 F.3d at 1137-38.

Plaintiff was arrested for obstruction of governmental operations under Alabama Code § 13A-10-2, which provides in part:

> (a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:
> (1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or
> (2) Intentionally prevents a public servant from performing a governmental function.

Ala.. Code § 13A-10-2 (1975). Some of the elements of this statute are unquestionably met in this case. The Alabama Code defines a "governmental function" as "any activity which a public servant is legally authorized to undertake on behalf of a government." Ala. Code § 13A-10-1. "Public servant" is defined to include "any . . . employee of government." Ala. Code § 13A-10-1. As discussed above, at the time of the arrest, Officer Kavli was performing her duties as a police officer

9

by protecting Carey Goodson from subsequent incidents with Goodson's in-laws and securing the scene after the arrests of Plaintiff's father and brother. It naturally follows then that Officer Kavli was a public servant performing a governmental function at the time of Plaintiff's arrest. The remaining question is whether Officer Kavli had a reasonable basis on which to conclude that Plaintiff was intentionally obstructing, impairing, or hindering her, or intentionally preventing her from performing her official duties by using a means of intimidation, physical force, or interference.

This court concludes without hesitation, based on the facts alleged in the complaint, that Officer Kavli did have at least an arguable probable cause on which to conclude that Plaintiff was intentionally impairing her in the administration of her job duties by means of intimidation. After Officer Kavli told Plaintiff to leave her brother's house, she drove to her grandmother's adjacent property and sat in her vehicle until Officer Kavli approached her. (Doc. #11, ¶¶ 15-18). After informing Officer Kavli that she was going to her grandmother's house, Plaintiff exited her vehicle and began to walk towards the house. (*Id.*, at ¶ 18). As Officer Kavli was returning next door to 1711 Brisco Street, however, Plaintiff turned around and began to walk back. (*Id.*). Plaintiff alleges that she turned around because she forgot her purse, but she does not allege that she communicated her purpose to Officer Kavli. (*Id.*). A reasonable officer could conclude that turning around and walking back towards her car was physical conduct through which Plaintiff was attempting to intimidate her sister-in-law and Officer Kavli, and could also conclude that Plaintiff was intentionally trying to prevent Officer Kavli from safeguarding her sister-in-law. As such, Officer Kavli had *at a minimum* arguable probable cause to arrest Plaintiff; she is therefore entitled to qualified immunity. Because Officer Kavli is due qualified immunity, Plaintiff's claim against Officer Kavli is due to be dismissed.

> **3.    Even if there was a violation of a constitutional or statutory right, that right was not clearly established.**

In order to have a complete record and address all of the parties' arguments, the court will proceed to the final step–whether Plaintiff has met her burden to show that any statutory or constitutional right was clearly established. It is well-established that only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can clearly establish the law in this Circuit. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003). Plaintiff must demonstrate that facts surrounding the alleged violation in this case are "materially similar" to the facts of a preexisting case such that the alleged violation in this case was clearly established as a constitutional violation at the time of the incident. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1032-33 (11th Cir. 2001). "Because fair and clear notice to government officials is the cornerstone of qualified immunity, courts must diligently analyze the preexisting case law to determine whether it really did provide plain notice to every reasonable government official that the pertinent conduct, in the specific circumstances, would clearly violate preexisting federal law." *Id.* at 1031.

In this case, Plaintiff has failed to meet the burden of showing that any alleged violation was of a clearly established right. Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit unless the alleged conduct violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982).[3] "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v.*

---

[3] "Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

*Pelzer*, 122 S. Ct. 2508, 2515 (2002) (internal quotations omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Pelzer*, 122 S. Ct at 2515 (internal quotations omitted).

Accordingly, "the salient question is whether the state of the law [at the time of the incident gave the Defendants] fair warning that their alleged [conduct] was unconstitutional." *Pelzer*, 122 S. Ct at 2515. Here, Plaintiff has pointed to no case nor any applicable legal principle that would suggest Office Kavli had fair warning that arresting her on January 24, 2009 would violate Plaintiff's clearly established constitutional rights.[4]

Because Plaintiff fails to show that Defendant Kavli's conduct violated a clearly established statutory or constitutional right, Defendant Kavli is entitled to qualified immunity.

## IV.   CONCLUSION

Based on the foregoing, the court determines that (1) the City's motion to dismiss is due to be granted and the claims against it dismissed without prejudice, and (2) Officer Kavli's motion to dismiss is due to be granted and the claims against her dismissed with prejudice.

---

[4]In her brief, Plaintiff cites to two cases to show that Defendant Kavli's actions violated clearly established law, *A.A.G. v. State*, 668 So. 2d 122 (Ala.Cr.App. 1995) and *D.A.D.O. v. State*, -- So. 3d - -, 2009 WL 2657876 (Ala.Cr.App. 2009). (Doc. # 19 at 6-11). However, both of these cases were decided by the Alabama Court of Criminal Appeals. As such, the cases cited by Plaintiff cannot serve to establish whether conduct clearly violated preexisting law. *See Thomas*, 323 F.3d at 955.

A separate order consistent with this Memorandum Opinion shall be entered.

**DONE** and **ORDERED** this      26th      day of May, 2011.

                                            **R. DAVID PROCTOR**
                                            UNITED STATES DISTRICT JUDGE